E
→
11 pgs

Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008
855-369-2410

BK 17082 PGS 52 - 62
INSTR # 2015035281
RECEIVED YORK SS

08/21/2015 10:11:28 AM
DEBRA ANDERSON
REGISTER OF DEEDS

This Document Prepared By:
Azra Habibija  Azra

NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: December 27, 2007
Original Loan Amount: $327,600.00
New Money: $171,594.59

REF 103986418A

Loan No.: 
Investor Loan No: 
MIN Number:

# FREDDIE MAC STANDARD MODIFICATION AGREEMENT

Borrower ("I"): **STEPHEN V. FLEURENT and LYNN A. FLEURENT**. Borrower is the grantor/mortgagor under the first lien mortgage, deed of trust, or security deed referenced below. If more than one Borrower is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** Lender is the beneficiary/mortgagee under the first lien mortgage, deed of trust, or security deed referenced below.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **December 19, 2007** and recorded in Book/Liber **15325**, Page **0549**, Instrument No: **2007064172**, of the Official Records of **YORK** County, **ME**.

Property Address ("Property"): **1 PINE CONE CIRCLE
BIDDEFORD, ME 04005**

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under the Mortgage. MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The MERS street address is 1901 E Voorhees Street, Suite C, Danville, IL 61834.

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

(page 1 of 9 pages)



**Legal Description:**
**See Exhibit "A" attached hereto and made a part hereof;**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Freddie Mac Standard Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:
   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. The property has not been condemned nor have I received notice of condemnation.
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Standard Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Home Affordable Modification Program (HAMP) and Freddie Mac Standard Modification, are true and correct; and
   F. I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.
   G. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:
   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;
   B. The Loan Documents will not be modified unless and until (I) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or




FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

C. **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **September 1, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **September 1, 2015**.

    A. The Maturity Date will be: **August 1, 2055**.

    B. The modified principal balance of my Note will include all amounts and arrearages that are past due past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$483,062.85** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C. **$144,918.86** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$338,143.99**. Interest at the rate of **4.125%** will begin to accrue on the Interest Bearing Principal Balance as of **August 1, 2015** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **September 1, 2015**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.125% | August 01, 2015 | $1,439.64 | $700.92 May adjust periodically | $2,140.56 May adjust periodically | September 01, 2015 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.


FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14



I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an Interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other agreement that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account

   E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

   G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan




FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

Documents, I agree as follows: If all or any part of the Property or any Interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In




FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14                                                                 (page 5 of 9 pages)

addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (I) the U.S. Department of the Treasury, (Ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (Iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. This Agreement modifies an obligation secured by an existing security instrument recorded in YORK County, ME, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security Instrument Is $311,468.26. The principal balance secured by the existing security instrument as a result of this Agreement is $483,062.85, which amount represents the excess of the unpaid principal balance of this original obligation.


FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14



In Witness Whereof, the Lender and I have executed this Agreement.

_____, (Seal)
STEPHEN V. FLEURENT -Borrower

_____, (Seal)
LYNN A. FLEURENT -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of _York_

The foregoing Instrument was acknowledged before me, a Notary Public on

_July 24, 2015_ by **STEPHEN V. FLEURENT and LYNN A. FLEURENT**.

_L. Stevenson_
(Signature of person taking acknowledgment)

_Notary Public_
(Title or rank)

My commission expires: _03/17/2022_

Lauren E. Stevenson
Notary Public, State of Maine
My Commission Expires March 17, 2022



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

**NATIONSTAR MORTGAGE LLC**

By: _____Aza Halifa_____ (Seal) - Lender
Name: __Azra Ha......__
Title: **Assistant Secretary**

_____8/4/15_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX
County of Dallas

Before me _____Erica White_____ /Notary Public (name/title of officer) on this day personally appeared _____Azra......_____, the Assistant Secretary of Nationstar Mortgage LLC, known to me, or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __4th__ day of __August__, A.D., __2015__.



Signature of Officer

__Notary Public__
Title of Officer

My Commission expires: __1/6/19__



ERICA WHITE
...... State of Texas
......
January 06, 2019



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 8 of 9 pages)*

_Azra Habib_  8/4/15
**Mortgage Electronic Registration Systems, Inc - Nominee for Lender**
Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX
County of Dallas

Before me _____Erica White_____ /Notary Public (name/title of officer) on this day personally appeared _____, the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. (known to me)(or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __4th__ day of __August__, A.D. __2015__.

Signature of Officer

My Commission expires: __1/6/19__

Notary Public
Title of Officer

ERICA WHITE
Notary Public, State of Texas
My Commission Expires
January 06, 2019

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

(page 9 of 9 pages)

# Exhibit "A"

Loan Number: 

Property Address: **1 PINE CONE CIRCLE, BIDDEFORD, ME 04005**

Legal Description:
A CERTAIN LOT OR PARCEL OF LAND, WITH THE BUILDINGS THEREON, SITUATED ON THE SOUTHEAST SIDE OF GRANITE STREET IN THE CITY OF BIDDEFORD, COUNTY OF YORK, STATE OF MAINE, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A 3/4 INCHES IRON PIPE ON THE SOUTHEASTERLY SIDELINE OF GRANITE STREET, SAID IRON PIPE BEING THE MOST NORTHERLY CORNER OF LAND CONVEYED BY NORMAN R. POIRIER TO OVID J. AND GERTRUDE PALMITESSA BY DEED DATED APRIL 27, 1967 AND RECORDED IN THE YORK COUNTY REGISTRY OF DEEDS IN BOOK 1766, PAGE 115, SAID IRON PIPE ALSO BEING THE MOST WESTERLY CORNER OF THE LOT OF LAND HEREIN CONVEYED; THENCE, NORTH 51 DEGREES 16 MINUTES 50 SECONDS EAST ALONG SAID SOUTHWESTERLY SIDELINE OF GRANITE STREET, A DISTANCE OF NINETY-FOUR AND SIXTY-TWO HUNDREDTHS (94.62) FEET TO A NO. 6 REBAR AND REMAINING LAND OF GEORGE AND DEBRA LARAVIERE; THENCE, SOUTH 38 DEGREES 10 MINUTES 15 SECONDS EAST ALONG SAID REMAINING LAND OF LARIVIERE, A DISTANCE OF ONE HUNDRED FIFTY-FIVE AND FOUR HUNDREDTHS (155.04) FEET TO A NO. 6 REBAR AND LAND NOW OR FORMERLY OF JOHN G. GREBIN AND CHARLENE N. GREBIN; THENCE, SOUTH 51 DEGREES 16 SECONDS 50 MINUTES WEST ALONG SAID LAND NOW OR FORMERLY OF GREBIN, A DISTANCE OF SEVENTY-FOUR AND SIXTY-TWO HUNDREDTHS (74.62) FEET TO A NO. 4 REBAR, SAID NO. 4 REBAR BEING THE MOST WESTERLY CORNER OF LAND OF SAID GREBIN; THENCE, SOUTH 38 DEGREES 10 MINUTES 15 SECONDS EAST ALONG SAID LAND NOW OR FORMERLY OF GREBIN, A DISTANCE OF FORTY-FIVE AND ONE HUNDREDTH (45.01) FEET TO A POINT AND LAND NOW OR FORMERLY OF JOANNE PLESSIS; THENCE, SOUTH 51 DEGREES 16 MINUTES 50 SECONDS WEST ALONG SAID LAND NOW OR FORMERLY OF PLESSIS, A DISTANCE OF TWENTY AND NO HUNDREDTHS (20.00) FEET TO A POINT, SAID POINT BEING THE SOUTHEASTERLY CORNER OF LAND CONVEYED BY BURTON AND ESTHER WALSH TO OVID J. AND GERTRUDE PALMITESSA BY DEED DATED AUGUST 1, 1973 AND RECORDED IN THE YORK COUNTY REGISTRY OF DEEDS IN BOOK 2005, PAGE 229, SAID POINT ALSO BEING THE MOST NORTHERLY CORNER OF OTHER LAND NOW OR FORMERLY OF JERRY AND CONSTANCE FLEURENT; THENCE NORTH 38 MINUTES 10 MINUTES 15 SECONDS WEST ALONG LAND NOW OR FORMERLY OF PALMITESSA,
(Continued on Page 2)




A DISTANCE OF TWO HUNDRED AND FIVE HUNDREDTHS (200.05) FEET TO SAID SOUTHEASTERLY SIDELINE OF GRANITE STREET AND THE POINT OF BEGINNING. SAID PARCEL CONTAINS 15,570 SQUARE FEET, MORE OR LESS. SAID BEARINGS REFER TO A 1970 MAGNETIC OBSERVATION. SAID PARCEL BEING SUBJECT TO A 20 FEET WIDE RIGHT OF WAY AS DESCRIBED IN A DEED FROM BURTON AND ESTHER WALSH TO JERRY AND CONSTANCE FLEURENT DATED JANUARY 19, 1974 AND RECORDED IN THE YORK COUNTY REGISTRY OF DEEDS IN BOOK 2024, PAGE 129.




